UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20771-CR-ROSENBAUM/SNOW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NATOYA MASHEA HANDY,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court upon Defendant's Motion to Suppress and Request for Evidentiary Hearing [D.E. 19]. The Court has carefully reviewed Defendant's Motion and all supporting and opposing filings. In addition, the Court held an evidentiary hearing on January 10 and 14, 2013, on Defendant's Motion. After careful consideration, the Court now denies Defendant's Motion to Suppress for the reasons set forth below.

### *I. Background and Findings of Fact*

Defendant is indicted on one count of access-device fraud and five counts of aggravated identity theft. During events occurring following a traffic stop of Defendant on April 5, 2012, the Government obtained evidence that it intends to use to try to establish Defendant's guilt. Through her pending Motion, Defendant seeks to suppress that evidence.

The Court held an evidentiary hearing on Defendant's Motion on January 10 and 14, 2013. During that hearing, the following witnesses testified: City of Miami Gardens Police Department Sergeant William Wagenmann, City of Miami Gardens Police Department Detective Miguel Irizarry,

Hertz Corporation Corporate Security Manager William Kinnebrew, and former Advantage Rent-a-Car Customer Sales Manager John Scott. Based on the testimony and other evidence adduced during the hearing, the Court makes the following findings of fact:

On April 5, 2012, then-Detective William Wagenmann of the City of Miami Gardens Police Department,[1] was patrolling an area near a park as part of a robbery-prevention detail. Earlier in the week, three to four robberies had occurred in the park. During his shift, Detective Wagenmann observed a silver Impala apparently circling the area. The car had heavily tinted windows and a Georgia license plate. Detective Wagenmann ran the license plate and learned that the Impala was a rental vehicle. Based on the dark tinting and the apparent circling activity of the Impala, Detective Wagenmann radioed other officers concerning the car.

Eventually, Detective Nettles saw the vehicle and began following it. When Detective Nettles caught up to the Impala, she made a traffic stop. Detective Wagenmann then joined her. In response to the officers' request, Defendant Natoya Handy, the sole occupant of the car, produced her license and declined to permit a search of the Impala. Handy further explained that she was driving a rental car. Detective Wagenmann requested the rental agreement, and Handy provided it. Upon his review of the rental agreement, Detective Wagenmann discovered that the rental agreement was for the period of March 26 through March 27, 2012, and that it appeared to have expired. Handy insisted that she had extended the rental over the telephone.

Detective Wagenmann then called Advantage Rent-a-Car ("Advantage"),[2] the rental-car

---

[1] Detective Wagenmann was promoted to the rank of sergeant a few months after the incident discussed above.

[2] At the time, Advantage was owned by Hertz Corporation. Currently, however, Hertz Corporation does not own Advantage.

company, to investigate Handy's claim.  According to Detective Wagenmann's testimony and handwritten notes, he spoke with an employee named Heath.  Heath advised Detective Wagenmann that the Impala was overdue and that the rental company had made numerous attempts to contact the renter to have the car returned, but the company had not been able to reach her.  Detective Wagenmann further testified that Heath explained that no one had contacted the rental-car company to extend the rental.  Based on this discussion, Detective Wagenmann asked whether Advantage wanted the car impounded, and Heath replied that it did.  Accordingly, Detective Wagenmann informed Heath that he would impound the car.

 Defendant suggests that Advantage did not want Detective Wagenmann to impound the Impala and that Detective Wagenmann did it on his own instead.  This Court respectfully disagrees with Defendant's interpretation of the evidence.  Specifically, Defendant relies on the testimony of John Scott, a customer sales manager for Advantage who worked at the office where Defendant rented the Impala.  According to Scott, Defendant had previously rented cars from Advantage on other occasions and had returned them late.  On these prior occasions, Scott testified, Defendant always paid her bill.  Defendant contends that, based on this earlier course of dealing, it is clear that Advantage would have preferred to give Defendant an opportunity to return the car and keep her business rather than to have the car impounded.

 Perhaps Defendant is correct that Scott might have rather wished to maintain Defendant's business.  But Scott did not make the decision or speak with Detective Wagenmann, according to the testimony; Heath did.  And Heath's notes of his conversation with Scott do not indicate that Scott stated that he preferred not to impound the car.  Instead, Heath's notes reflect that Detective Wagenmann called Advantage and informed the company that Defendant was in possession of a

3

rented vehicle for which the agreement appeared to have expired and that Defendant claimed that she had extended the agreement. Heath's notes report, "ADV[ISED] DET[ECTIVE] [WAGENMANN] I DON'T SHOW IT TO BE EXTENDED AND CALLED [THE RENTAL OFFICE.] [SPOKE WITH SCOTT,] WHO ADV[ISED] HE'S BEEN TRYING TO CONTACT [CUSTOMER] TO EXTEND IT BUT SHE DOESN'T ANSWER HER PHONE,[3] DET[ECTIVE] [WAGENMANN] ADV[ISED] HE'S GOING TO IMPOUND THE VEH[ICLE]." Defense Exhibit ("DX") 1 (*see* D.E. 28 at 17).

Although the last sentence could mean, as Defendant suggests, that it was Detective Wagenmann's idea to impound the car, it could just as easily be consistent with Detective Wagenmann's agreement to impound the car when Advantage requested that he do so. Nor does any evidence indicate that Advantage did not want Detective Wagenmann to impound the vehicle. On the contrary, the evidence shows that the car was nine days overdue, Advantage had tried to charge Defendant's credit card for additional days but had been declined, Defendant did not respond to Advantage's attempts to contact her, and Defendant had taken it upon herself to tint the windows of Advantage's car so dark that one could not see inside the vehicle in broad daylight. Since nothing conflicts with Detective Wagenmann's testimony that Advantage requested and desired the impoundment, the computer note is ambiguous, and the Court found Detective Wagenmann to be credible, the Court concludes that the last sentence of the computer note does not impeach Detective Wagenmann's testimony.

---

[3] Hertz Corporation Corporate Security Manager William Kinnebrew testified that the company's computer system shows that when Defendant failed to return the car on March 27, 2012, as required by the agreement, Advantage attempted on March 29, 2012, to charge Defendant's credit card for the additional days' rental, but the card was declined.

4

While at the scene, Detective Wagenmann measured the tint on the vehicle, and his tint meter showed the tint to be at 4%, in excess of the legally permitted amount. Defendant stated that she had tinted the windows because she is an entertainment personality and did not want people to recognize her. Detective Wagenmann issued Defendant a citation for having tint that was too dark. Then-Advantage customer sales manager John Scott testified that all Advantage vehicles comply with all Florida safety standards and do not contain windows that are tinted in excess of the state standard. In addition, Scott explained that if a customer tints the windows of a rental car, that customer must remove the tinting before returning the car or pay for the tinting to be removed upon return of the vehicle.

Next, Detective Wagenmann inventoried the contents of the vehicle before allowing it to be impounded. The City of Miami Gardens Police Department Policy Manual contains a written provision regarding the conducting of inventories on towed vehicles (the "Policy"). In pertinent part, that Policy states,

> In the course of duty on a day-to-day basis, it is necessary for the protection of the employee and the Department to inventory vehicles . . . being towed and/or stored. Vehicles . . . which are towed as a result of an accident, abandonment, seizure, incident to an arrest, or otherwise detained in storage, and not in the possession of the owner, become the responsibility of the impounding employee. The employee is liable for the vehicle, . . . its parts and contents. The contents of the vehicle . . . include, but are not limited to, all packages and containers located within the passenger compartment, the trunk, or any other secured area of the vehicle (i.e., glove box, console, under seat, etc.) To insure that liability does not attach for property located within any vehicle . . . or any package/container, the contents of said vehicle or package/container, whether locked, opened or closed, shall be ascertained and inventoried.

Government Exhibit ("GX") 5 (*see* D.E. 28). The Policy further directs that at the time that a City

of Miami Gardens Police Department employee requests a tow, that employee "will inform the Communications Center of, among other information, whether the tow is "[p]olice directed or [a] private request for tow." *Id.*

In accordance with the Policy, Detective Wagenmann then inventoried the complete contents of the car. On the front passenger seat, he noted finding bank and tax documents relating to Willie Donnell and Genia Bennett. Defendant explained that Donnell was her aunt, and she was assisting her aunt by resolving a banking or credit-card-related problem. On the floor in the backseat was an Apple laptop computer, which was closed. Detective Wagenmann testified that, in conducting the inventory, he opened the laptop to ensure that it was not damaged and the screen was not cracked. When he opened the computer, the screen lit up and the tax return of Rinaldo Britt appeared on it. Detective Wagenmann did not turn on the computer or otherwise touch any buttons on it.

Then Detective Wagenmann opened the trunk and inventoried its contents. Inside, he found, among other items, a backpack. Detective Wagenmann opened the backpack and removed its contents to inventory them. He found a notebook. When he took it out of the bag, loose papers fell out. They contained lists of names, Social Security information, and other private information of various individuals. In addition, the backpack held a W2 and mail for Shuana Gibson, bank documents in different names, blank American Express documents, prescription drugs in the name of another individual, a Hewlett Packard computer, several cellular telephones, credit cards, and rechargeable cards with no names, among other items. Detective Wagenmann also found $2,960.00 in United States currency, which Defendant stated was hers.

Upon seeing the lists of personal information, Detective Wagenmann called for Detective Miguel Irizarry, an economic crimes and fraud investigator with the City of Miami Gardens Police

6

Department, to come to the scene. Detective Irizarry testified that, upon his arrival, he asked Defendant whether she would accompany him to the police station to discuss the items found in the Impala. She agreed. At the station, Detective Irizarry provided Defendant with a written *Miranda* rights waiver form and asked her to read aloud the first sentence to ensure that she could read and understand English. In addition, Detective Irizarry inquired of Defendant regarding her level of education, whether she was under the influence of any intoxicants, and what her last meal was. Defendant responded that she was in her third year of college, she was studying business administration, she was not under the influence of intoxicants, and she had last eaten at IHOP. Then Defendant read and initialed the *Miranda* rights-waiver form, waiving her rights and agreeing to speak with Detective Irizarry.

Defendant did not request the services of an attorney at that time but instead began to make statements. When Detective Irizarry asked Defendant about the lists of names, birth dates, Social Security numbers, and other personal information, Defendant invoked her rights, and questioning ceased. The Court found Sergeant Wagenmann and Detective Irizarry to be credible in their respective testimony as set forth above.

## *II. Discussion*

Defendant seeks the suppression of all items seized as a result of the April 5, 2012, traffic stop. In support of Defendant's Motion to Suppress, Defendant argues that Detective Wagenmann's inventory of the Impala during the April 5, 2012, traffic stop violated her Fourth Amendment rights.[4]

---

[4]Although Defendant's original Motion may have also separately challenged the lawfulness of the initial traffic stop and the admissibility of Defendant's statements to Detective Irizarry, in light of the evidence adduced during the evidentiary hearing and for purposes of this Motion only, Defendant acknowledged that she does not continue to pursue these challenges, except to the extent that her statements to Detective Irizarry may constitute fruits of the

The Fourth Amendment safeguards against unreasonable searches and seizures and provides, in pertinent part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. But "inventory searches are . . . a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (citation omitted). That is because the Supreme Court has concluded that inventory searches do not implicate either the policies behind the Fourth Amendment's warrant requirement or the concept of probable cause. *Id.* (citation omitted). As the Supreme Court has explained, "[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Id.* at 372.

To prevent inventory searches from being used as a "ruse for general rummaging in order to discover incriminating evidence," *Florida v. Wells*, 495 U.S. 1, 4 (1990) — which would violate the Fourth Amendment, police departments must conduct inventory searches pursuant to an established policy or practice and must not be permitted "so much latitude that inventory searches are turned into 'a purposeful and general means of discovering evidence of crime.'" *Id.* (citation omitted). Thus, although other policies may also be allowed, "policies of opening all containers . . . are unquestionably permissible . . . ." *Id.*

Here, the City of Miami Gardens Police Department's Policy regarding inventories of impounded or towed vehicles leaves no room for discretion: "To insure that liability does not attach

---

poisonous tree from the allegedly wrongful search of Defendant's car during the traffic stop.

for property located within any vehicle . . . or any package/container, ***the contents of said vehicle or package/container, whether locked, opened or closed, shall be ascertained and inventoried***." GX 5 (*see* D.E. 28) (emphasis added).  Moreover, this Policy applies to all vehicles "being towed and/or stored," whether pursuant to a "[p]olice directed or [a] private request for tow." *Id.* Therefore, as long as the impounding of the vehicle was not improper, the inventory did not violate Defendant's Fourth Amendment rights.

Defendant suggests, however, that the impounding of the Impala was not proper.  More specifically, Defendant asserts first that then-Detective Wagenmann — not Advantage — decided on his own to impound the car as a pretext for searching Defendant's car since Defendant declined consent to search.  For the reasons previously articulated, this Court does not reach the same conclusion.  In particular, the Court finds Detective Wagenmann's testimony to be credible that he impounded the Impala at Advantage's request and not on his own initiative or over Advantage's objection.

Alternatively, Defendant urges that the inventory exception to the Fourth Amendment does not apply to overdue cars impounded at the request of the company from which they were rented. In support of this contention, Defendant directs the Court to *United States v. Cooper*, 133 F.3d 1394 (11th Cir. 1998).  In *Cooper*, the defendant was pulled over in a traffic stop.  He provided the officer with a copy of the rental-car agreement for the car he was driving.  The agreement revealed that the car was four days overdue, but the defendant explained that he had extended the due date.  When the law officer contacted the rental company, the company denied that the defendant had requested an extension and asked that the car be towed and returned.  The defendant then requested to speak with a company representative, but the officer declined.  Thereafter, the officer "swept" the car and found

9

a loaded firearm in the glove compartment. Then the officer decided to conduct a full inventory of the vehicle, but it started to rain. Therefore, the officer instructed the dispatcher to cancel the towing service so that he would not have to search the car in the rain. The officer drove the rental car to a covered overpass and completed the search, discovering safes, which contained narcotics and drug paraphernalia. After a "thorough search," the car was towed and returned to the rental company, which charged the defendant's credit card for use of the vehicle through the date of return of the car.

When the defendant sought to suppress the evidence obtained from the search, the government challenged his standing to do so because the car was overdue at the time of the search, so, the government contended, the defendant had no reasonable expectation of privacy in the vehicle. The Eleventh Circuit disagreed, holding that the defendant had standing, and remanded the case to the district court to resolve the defendant's motion on the merits. In so doing, the court did not discuss or otherwise opine on the merits of the defendant's motion to suppress.[5] Thus, on cursory review, *Cooper* might seem not to have relevance to this matter.

---

[5]The court was careful to note, however, that although it cited a case where the government did not dispute the reasonableness of an expectation of privacy in a rental car that was three weeks overdue, it did not thereby hold that such an expectation of privacy was reasonable. *See Cooper*, 133 F.3d at n.10. The Government does not argue that Defendant lacks standing to pursue her Motion to Suppress in this case, and, in view of the fact that suppression is not warranted, anyway, for the reasons set forth in this Order, the Court does not explore this issue. Nevertheless, the Court notes that the facts of this case differ in what may be important respects from those of *Cooper*. Unlike the *Cooper* defendant, Defendant here never sought to speak with the rental-car company. On the contrary, despite the rental-car company's repeated efforts to contact Defendant, Defendant never responded. Also unlike the *Cooper* defendant, Defendant Handy never paid her bill in full for the extra days of the rental. To this day, her bill remains outstanding. And, Defendant Handy's actions in applying tint to the windows of the rental vehicle — even though she contracted to rent the car for only a single day — may also suggest that, unlike the *Cooper* defendant, Defendant Handy had taken actions evidencing an intent never to return the car. Finally, Defendant Handy was overdue in her rental by more than twice as many days as the *Cooper* defendant.

However, Defendant points to the portion of the *Cooper* opinion where the court responded to the government's attempt to analogize the case to *United States v. Allen*, 106 F.3d 695 (6th Cir.), *cert. denied*, 520 U.S. 1281 (1997). In *Allen*, Allen rented a motel room for two nights. After checkout time on the second day, the motel manager went to Allen's room to find out whether he wished to stay longer. Although Allen was not there, the manger found Allen's marijuana. Therefore, the manager changed the lock on the room and then contacted law enforcement. The court denied Allen's motion to suppress, holding that "[o]nce the manager, through private action, took possession of the motel room, Allen could no longer assert a legitimate privacy interest in its contents." *Cooper*, 133 F.3d at 1401 (quoting *Allen*, 106 F.3d at 699) (internal quotation marks and footnote omitted).

The Eleventh Circuit found *Allen* irrelevant to the issue in Cooper because the car-rental company,

> unlike the motel manager in *Allen*, had not repossessed the rented property prior to the challenged search. Further, the government's argument that the law enforcement officers acted as [the rental company's] repossession agent lacks merit because, unlike the motel manager's changing the lock on the door to Allen's room, the [law enforcement officer's] assertion of control over Cooper's rental car was not "private action."

*Cooper*, 133 F.3d at 1401. The Court understands Defendant in the pending matter to argue that *Cooper* suggests that the City of Miami Gardens Police Department either could not have impounded the Impala at Advantage's request or that, if it could have done so, it nonetheless lacked authority to conduct an inventory of the car before towing the vehicle.

The Court respectfully disagrees. Defendant points to nothing that requires law enforcement

11

to release an overdue vehicle to a rental customer who has no continuing legitimate claim to the car, has been overdue in returning the car for nine days, has had payment for extra days declined by her credit card, and has personalized the vehicle by adding tint to the windows, when the legitimate owner — the rental company — has requested that the car be impounded.

And, once Detective Wagenmann agreed to impound the car for Advantage, he was subject to the City of Miami Gardens Police Department's inventory Policy.  Nor does the fact that Detective Wagenmann did not impound the car in connection with a crime affect the analysis.  The same policies that the Supreme Court has articulated as justifying inventories following retention of a vehicle in connection with a crime apply with equal force to inventories performed prior to impounding a vehicle at the request of a rental company.  Indeed, the Supreme Court has explained that it "has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." *Bertine*, 479 U.S. at 373.  An overdue vehicle to be impounded as a result of a rental company's request is in lawful police custody, even if only for the purposes of conveying the car to the towing company or to the impoundment lot.  Therefore, so long as such inventories are conducted as part of a legitimate impounding and not as a pretext for engaging in a warrantless search, they do not violate the Fourth Amendment.

To determine whether an inventory is legitimate, the court must consider the totality of the circumstances.  Here, for all of the reasons previously discussed, this Court concludes that the inventory was performed in accordance with the Policy as part of a *bona fide* effort to impound the Impala at Advantage's request, not concocted for the purpose of circumventing the Fourth Amendment.

### *III.  Conclusion*

For the foregoing reasons, Defendant's Motion to Suppress [D.E. 19] is hereby **DENIED**.

**DONE** and **ORDERED** at Fort Lauderdale, Florida, this 15th day of January 2013.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

copies:  Counsel of Record